IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KENNETH MARTIN, AARON TRUESDELL, and JOHNNY TEJADA, | )<br>)<br>)<br>) |
| Plaintiffs, | ) 13 C 3526 |
| v. | )<br>) Judge Virginia M. Kendall |
| F.E. MORAN INC., FIRE PROTECTION OF NORTHERN ILLINOIS, | )<br>)<br>) |
| Defendant. | )<br>) |

**MEMORANDUM OPINION AND ORDER**

The Plaintiffs filed a four-count First Amended Complaint against F.E. Moran Inc., Fire Protection of Northern Illinois on November 12, 2013. The First Amended Complaint alleges that F.E. Moran discriminated against the Plaintiffs, each of whom worked for F.E. Moran as journeyman sprinkler fitters until F.E. Moran laid them off and did not transfer or recall them. Plaintiffs Kenneth Martin and Aaron Truesdell each allege one violation of Title VII of the Civil Rights Act and one violation of 42 U.S.C. § 1981. Plaintiff Johnny Tejada alleges two violations of Title VII of the Civil Rights Act and two violations of 42 U.S.C. § 1981.

F.E. Moran moves to dismiss all but Truesdell's layoff-based Title VII claim. (Dkt. No. 24.) In employment discrimination cases, a complaint need only provide the defendant with sufficient notice to begin to investigate and prepare a defense. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (confirming minimal pleading standard for simple claims of race or sex discrimination). Here, the First Amended Complaint alleges that F.E. Moran not only laid off each Plaintiff because of race but also did not transfer or recall each Plaintiff because of race. These allegations are sufficient to state claims for employment discrimination. Although there

are questions concerning the timing of the filing of the original Complaint, these questions are best answered after a period of discovery.

Alternatively, F.E. Moran moves to sever the Plaintiffs' claims or to bifurcate the Plaintiffs' trials. (Dkt. No. 27.) As alleged, the Plaintiffs' claims arise from the same series of transactions and concern a common question of fact. Therefore, joinder is proper. Further, it is too soon for this Court to determine whether separate trials are necessary. There is no evidence before this Court from which it can determine whether the considerations underlying Fed. R. Civ. P. 42 require separate trials.

For these reasons and for the reasons stated herein, this Court denies F.E. Moran's motions.

## FACTS

This Court takes the following well-pleaded allegations from the First Amended Complaint and treats them as true for purposes of F.E. Moran's motion to dismiss.

F.E. Moran is an Illinois corporation headquartered in Northbrook, Illinois. (Dkt. No. 21 at ¶ 7.) F.E. Moran installs, inspects, tests, and maintains fire protection sprinkler systems in commercial and residential facilities. (Dkt. No. 21 at ¶ 8.) F.E. Moran employed the Plaintiffs as sprinkler fitters. (Dkt. No. 21 at ¶ 9) until it laid each of them off. (Dkt. No. 21 at ¶ 11.) F.E. Moran did not transfer any of the Plaintiffs to another job site or recall any of the Plaintiffs even though each Plaintiff expressed an interest in and availability for a new assignment at F.E. Moran's existing job sites. (Dkt. No. 21 at ¶ 11.) F.E. Moran did transfer white sprinkler fitters to other job sites and did recall white sprinkler fitters. (Dkt. No. 21 at ¶¶ 12-13.)

Martin, an African-American, worked for F.E. Moran from 2005 to 2009. (Dkt. No. 21 at ¶¶ 4, 14.) Martin is a journeyman sprinkler fitter and has been a member of Sprinkler Fitters Local 281 since 1991. (Dkt. No. 21 at ¶ 4.) He performed well as a sprinkler fitter and foreman

for F.E. Moran. (Dkt. No. 21 at ¶ 9.) F.E. Moran laid Martin off for lack of work around August 10, 2009. (Dkt. No. 21 at ¶ 14.) Although he asked his supervisor at F.E. Moran to transfer him to another job, Martin did not receive any more work from F.E. Moran. (Dkt. No. 21 at ¶¶ 16-17.) Martin went to work for another company in January 2010, which F.E. Moran took over in June 2010. (Dkt. No. 21 at ¶¶ 17-18.) In August 2010, F.E. Moran again laid Martin off. (Dkt. No. 21 at ¶ 19.) Martin told his supervisor at F.E. Moran about his interest in and availability for another job, but F.E. Moran did not transfer or recall him. (Dkt. No. ¶¶ 20-21.)

Martin tried to file a charge against F.E. Moran with the U.S. Equal Employment Opportunity Commission on March 28, 2011, but was told by an EEOC employee that he could not do so. (Dkt. No. 21 at ¶ 22.) Martin tried again on April 15, 2011, but an EEOC employee again discouraged Martin from filing a charge. (Dkt. No. 21 at ¶ 23.) Martin finally filed a charge with the EEOC on July 11, 2011. Plaintiff received his right to sue letter after February 10, 2013.

Truesdell, an African-American, worked for F.E. Moran from 2006 to 2010. (Dkt. No. 21 at ¶¶ 5, 26, 34.) Truesdell is a journeyman sprinkler fitter and has been a member of Sprinkler Fitters Local 281 since 1989. (Dkt. No. 21 at ¶ 5.) Truesdell performed his duties as a sprinkler fitter well for F.E. Moran (Dkt. No. 21 at ¶ 9) and had been singled out for his outstanding performance (Dkt. No. 21 at ¶ 28). F.E. Moran laid Truesdell off in 2009 but transferred three white sprinkler fitters who worked with Truesdell to other jobs. (Dkt. No. 21 at ¶ 30.) F.E. Moran recalled Truesdell in early 2010 to work as the foreman on a job at a school in a minority neighborhood on Chicago's south side. (Dkt. No. 21 at ¶ 32.) Later that year, F.E. Moran transferred Truesdell to a job in Matteson, a predominantly black suburb, and then to another job in a predominantly black neighborhood on Chicago's west side. (Dkt. No. 21 at ¶ 33.) When that

3

job neared its end, F.E. Moran laid Truesdell off for lack of work. (Dkt. No. 21 at ¶ 34.) Truesdell told his supervisor at F.E. Moran about his interest in and availability for another job but F.E. Moran did not transfer or recall him. (Dkt. No. 21 at ¶¶ 35-36.) F.E. Moran did, however, transfer and recall white sprinkler fitters at this time. (Dkt. No. 21 at ¶ 35.) Truesdell filed a charge with the EEOC on July 6, 2011. Truesdell received a right to sue letter from the EEOC after February 10, 2013.

Tejada, who is black of Panamanian ancestry, became an F.E. Moran employee in June 2010. (Dkt. No. 21 at ¶¶ 6, 39.) He worked on a job at a school in a predominantly black neighborhood on Chicago's south side. (Dkt. No. 21 at ¶ 39.) Although he was the only journeyman sprinkler fitter on site for several weeks, he did not receive foreman pay. (Dkt. No. 21 at ¶ 40.) And after F.E. Moran hired a second sprinkler fitter for the job, Tejada did not receive foreman pay even though he acted as the foreman. (Dkt. No. 21 at ¶ 41.) When the job ended, F.E. Moran transferred the second sprinkler fitter, who was white, to another job. (Dkt. No. 21 at ¶ 42.) F.E. Moran laid Tejada off around September 10, 2010. (Dkt. No. 21 at ¶ 42.) Tejada inquired about more work from F.E. Moran but did not receive any. (Dkt. No. 21 at ¶ 43.)

Tejada is a journeyman sprinkler fitter and has been a member of Sprinkler Fitters Local 281 since 2005. (Dkt. No. 21 at ¶ 6.) Tejada performed his duties as a sprinkler fitter well for F.E. Moran. (Dkt. No. 21 at ¶ 9.) He submitted an intake questionnaire to the EEOC on June 30, 2011. (Dkt. No. 21 at ¶ 44.) He subsequently filed a charge with the EEOC on July 14, 2011, which he revised on July 20, 2011. (Dkt. No. 21 at ¶ 45.) The EEOC issued a right to sue letter to Tejada, which he received after August 15, 2013. (Dkt. No. 21 at ¶ 46.)

## LEGAL STANDARD

A complaint must state a claim to relief that is plausible on its face in order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). A claim is plausible on its face when the allegations in the complaint support a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a motion to dismiss, courts must accept all well-pleaded factual allegations as true. *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014). In addition, courts must draw all reasonable inferences in the plaintiff's favor. *Yeftich*, 722 F.3d at 915.

## DISCUSSION

I. **Motion to Dismiss**

   A. **Martin**

F.E. Moran seeks to dismiss Martin's Title VII claim because Martin purportedly filed his EEOC charge more than 300 days after F.E. Moran laid Martin off. "In Illinois, a complainant must file a charge with the EEOC within 300 days of the alleged discriminatory act and failure to do so renders the charge untimely." *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1121 n.4 (7th Cir. 2009) (quoting *Filipovic v. K & R Express Systems, Inc.,* 176 F.3d 390, 395 (7th Cir.1999). Martin claims that F.E. Moran laid him off on August 10, 2010. Martin did not file a charge with the EEOC until July 11, 2011.

Although he did not file his charge within 300 days, Martin claims that he filed a questionnaire with the EEOC on March 28, 2011. Martin checked Box 2 on page 4 of that questionnaire, which states "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I describe above." (Dkt. No. 21-1, Ex. A at 4.) A document submitted to the EEOC that alleges discrimination and asks the agency to take remedial action

may qualify as a charge even if it lacks the appropriate caption and charging language. *E.E.O.C. v. Watkins Motor Lines, Inc.*, 553 F.3d 593, 597-98 (7th Cir. 2009). For example, "an intake questionnaire supplemented by a six-page affidavit constitutes a 'charge' for purposes of timeliness . . . ." *Swearnigen-El v. Cook County Sheriff's Dep't*, 602 F.3d 852, 865 (7th Cir. 2010) (explaining the holding in *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008)).

Here, Martin did not include a six-page affidavit but he did provide sufficient detail to notify the EEOC of his complaint so that they could take appropriate action. When compared to Martin's July 2011 EEOC charge, his EEOC questionnaire provides more information than his actual EEOC charge regarding his complaint. Therefore, Martin's EEOC questionnaire qualifies as a "charge" for purposes of timeliness. According to the First Amended Complaint, Martin submitted his EEOC questionnaire on March 28, 2011, which is within 300 days of his layoff.

F.E. Moran also seeks to dismiss Martin's claims because he purportedly failed to allege the essential elements of his claims. Specifically, F.E. Moran argues that Martin failed to allege that he applied for or sought an available position, or that he was qualified for an available position. But the First Amended Complaint alleges not only that Martin expressed his interest in other jobs as a sprinkler fitter to his supervisor (Dkt. No. 21 at ¶¶ 20-21) but also that those other jobs went to white sprinkler fitters who worked with Martin at Boone Clinton School (Dkt. No. 21 at ¶ 19.). By identifying who received these positions, Martin provided more than adequate detail about at least two open positions. These allegations establish the essential element that F.E. Moran argues is missing from Martin's claims.

For these reasons, this Court denies F.E. Moran's motion to dismiss Martin's claims.

**B.     Truesdell**

F.E. Moran seeks to dismiss Truesdell's claims because he purportedly failed to allege the essential elements of his claims. Specifically, F.E. Moran argues that Truesdell failed to allege that he applied for or sought an available position, or that he was qualified for an available position. But the First Amended Complaint alleges that F.E. Moran recalled Truesdell for a job once and that Truesdell subsequently reminded his superintendent that he was available for another job after that job ended. (Dkt. No. 21 at ¶¶ 32, 35.) By identifying the relevant time period during which F.E. Moran allegedly filled open positions with other sprinkler fitters, Truesdell provided sufficient information concerning available positions. Truesdell also alleges that he was qualified for the work he performed for F.E. Moran. (Dkt. No. 21 at ¶ 9.) These allegations establish the essential element that F.E. Moran argues is missing from Truesdell's claims.

F.E. Moran also seeks to dismiss Truesdell's Title VII claim based on failure to transfer or recall as beyond the scope of his EEOC charge. In his EEOC charge, Truesdell claimed F.E. Moran laid him off because of his race. (Dkt. No. 21-1, Ex. E.) He does not mention that F.E. Moran failed to transfer or recall him in his EEOC charge.

Courts apply a liberal standard when reviewing the scope of an EEOC charge. *Farrell v. Butler University*, 421 F.3d 609, 616 (7th Cir. 2005). When applying this standard, courts allow claims reasonably related to and growing out of the allegations in the EEOC charge to proceed. *Lavalais v. Village of Melrose Park*, 734 F.3d 629, 634 (7th Cir. 2013). At a minimum, reasonably related claims must describe the same conduct and implicate the same individuals. *Id.* One question courts may ask when deciding whether a claim is within the scope of an EEOC charge is whether one would reasonably expect the claim to grow from an EEOC investigation of the original EEOC charge. *Ezell v. Potter*, 400 F.3d 1041, 1047 (7th Cir. 2005).

Here, the allegations in the First Amended Complaint support the inference that an EEOC investigation of Truesdell's layoff charge would have led to his failure to transfer and failure to recall claims. According to the First Amended Complaint, journeyman sprinkler fitters employed by F.E. Moran worked from job to job, meaning that when one job ended they asked F.E. Moran to transfer them to a new job or to give them a call when a new job came became available. Allegations such as these distinguish this case from *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 920 (7th Cir. 2000) where a contract dispute led to the closure of a mine and a corresponding reduction in force. *Sauzek*, 202 F.3d at 917. After prevailing in the contract dispute, the company in *Sauzek* re-opened the mine but did not recall all of the laid off workers. *Id.* The decision to terminate the employee in *Sauzek* was a separate and distinct act from the decision not to rehire the employee in a subsequent recall. *Id.* at 920. In short, the mine closure was a distinct event that necessitated layoffs and it was not clear at the time whether the mine would reopen.

In contrast, Truesdell's layoff was part of the ebb and flow of F.E. Moran's business such that there is a reasonable relationship between the failure to transfer or recall and the layoff— F.E. Moran's employees expected to be transferred or recalled when a job ended. And it is whether there is a reasonable relationship between the two that determines whether a claim is within the scope of an EEOC charge. That was true in *Sauzek* and in *Oxman v. WLS-TV*, 12 F.3d 652 (7th Cir. 1993), which *Sauzek* cites. *See Sauzek*, 202 F.3d at 920; *Oxman*, 12 F.3d at 660 ("[T]he failure to rehire claim was not reasonably related to the termination claim originally filed.").

For these reasons, this Court denies F.E. Moran's motion to dismiss Truesdell's claims.

**C.   Tejada**

F.E. Moran seeks to dismiss Counts I and II with respect to Tejada because Tejada purportedly did not file his Complaint within ninety days of receiving his right to sue letter. An EEOC employee signed Tejada's right to sue letter on August 2, 2011. (Dkt. No. 21-1, Ex. J.) But Tejada alleges that he did not receive the letter until after August 15, 2013. (Dkt. No. 21 at ¶ 46.) It is the receipt of the right to sue letter that triggers the ninety-day filing deadline. *Reschny v. Elk Grove Plating Co.*, 414 F.3d 821, 823 (7th Cir. 2005). At this stage, this Court must take Tejada's allegations as true. And according to those allegations, Tejada filed his complaint within ninety days of receiving his right to sue letter.

F.E. Moran also seeks to dismiss Counts I and II with respect to Tejada because Tejada purportedly did not file his EEOC charge within 300 days of his layoff. That does not appear to be the case at least with respect to one of the charges Tejada filed with the EEOC. The EEOC purportedly received a charge on July 14, 2011, from Tejada based on a discriminatory act that occurred on or about September 17, 2010, layoff. (Dkt. No. 21-1, Ex. H.) This charge satisfies the 300 day requirement. The second Tejada charge attached to the complaint differs from the first with respect to an EEOC date-stamp of July 20, 2011. Tejada did not file this charge within 300 days of his layoff. The untimely filed charge has no effect on Tejada's claims, however, because both charges contain the same allegations.

Tejeda's allegations, however, indicate that he was laid off on or about September 12, 2010. If true, then it is unclear which date should govern. At this stage however, this Court must draw all reasonable inferences in Tejada's favor. Therefore, for purposes of this motion, this Court takes the date of Tejada's layoffs from the questionnaire and charges attached to the First Amended Complaint as Exhibits G-I.

F.E. Moran also seeks to dismiss Counts I and III with respect to Tejada because he purportedly failed to allege the essential elements of his claims. Specifically, F.E. Moran argues that Tejada failed to allege that he applied for or sought an available position, or that he was qualified for an available position. But the First Amended Complaint alleges that Tejada's supervisor assured Tejada that he would receive more work and that Tejada repeatedly inquired about more work. (Dkt. No. 21 at ¶ 43.) These allegations support an inference that Tejada applied for available positions. Tejada also alleges that he was qualified for the work he performed for F.E. Moran. (Dkt. No. 21 at ¶ 9.) These allegations establish the essential element that F.E. Moran argues is missing from Tejada's claims.

F.E. Moran also seeks to dismiss Tejada's Title VII claim based on failure to transfer or recall as beyond the scope of his EEOC charge. In his EEOC charge, Tejada claimed F.E. Moran discharged him because of his race. (Dkt. No. 21-1, Ex. E.) He does not mention that F.E. Moran failed to transfer or recall him in his EEOC charge. As discussed above with respect to the scope of Truesdell's EEOC charge, there is a reasonable relationship in this case between the failure to transfer or recall and the layoff.

F.E. Moran seeks to dismiss Tejada's wage discrimination claims as preempted by the Labor Management Relations Act ("LMRA"). "Section 301 of the LMRA provides a federal rule for contract disputes between employers and labor organizations or between different labor organizations." *Crosby v. Cooper B-Line, Inc.*, 725 F.3d 795, 800 (7th Cir. 2013) (citing 29 U.S.C. § 185(a)). Section 301 may displace an independent federal cause of action where the claim concerns a legitimate labor dispute and a breach of a collective bargaining agreement. *United States v. Palumbo Bros., Inc.*, 145 F.3d 850, 864 (7th Cir. 1998). To determine whether a claim arises under § 301, one must look to the substance of the plaintiff's claim. *Crosby*, 725

F.3d at 800. But § 301 does not completely preempt all claims that touch upon rights that have some connection to a collective bargaining agreement. *Id.* Indeed, factual overlap between an independent cause of action and a cause of action under the collective bargaining agreement does not necessarily result in preemption. *See id.* ("Factual overlap between a state-law claim and a claim one could assert under a CBA is not necessarily sufficient.").

Here, Tejada alleges wage discrimination based on race. He claims that F.E. Moran should have paid him as a foreman when he was the only person working a job. He also claims that F.E. Moran should have paid him as a foreman when he was working a job with a less experienced journeyman. Given that F.E. Moran did not file a copy with its pleadings, the extent to which the collective bargaining agreement defines when someone qualifies as a foreman is unclear. But the collective bargaining agreement is unnecessary at this point because § 301 would not preempt Tejada's wage discrimination claims anyhow. To prove his claims, Tejada must show "that (1) he is a member of a protected class; (2) he was meeting his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated differently from similarly situated employees who were not members of the protected class." *Ford v. Minteq Shapes & Services, Inc.*, 587 F.3d 845, 848 (7th Cir. 2009). Drawing all inferences in Tejada's favor, this claim does not necessarily require interpretation of the collective bargaining agreement. For example, Tejada may show that F.E. Moran generally paid the foreman rate for an employee who worked a job alone but did not do so for Tejada because of his race. This Court understands that F.E. Moran may invoke the collective bargaining agreement in its defense and that the facts underlying Tejada's wage discrimination claims overlap with any claim he could have brought under the collective bargaining agreement. But that does not result in preemption. *See Crosby*, 725 F.3d at 800-01 (explaining that defending

against a claim by referring to a collective bargaining agreement does not transform the claim into one brought under § 301).

For these reasons, this Court denies F.E. Moran's motion to dismiss Tejada's claims.

**D.    Motion to Strike**

F.E. Moran also moved to strike paragraphs 25, 38, and 46 of the First Amended Complaint. The Plaintiffs concede that these paragraphs each contain a typographical error, and this Court grants them leave to file an amended complaint to correct those errors.

**I.    Motion to Sever**

F.E. Moran also moves to sever claims by plaintiff or, in the alternative, to require a separate trial for each plaintiff. Fed. R. Civ. P. 21 concerns misjoinder of parties and allows courts to sever any claim against any party. Fed. R. Civ. P. 20(a)(1) allows parties to join as plaintiffs in one action if they assert claims arising out of the same series of transactions or occurrences and there is a question of law or fact common to all plaintiffs. Rule 20(a)(1) permits plaintiffs having separate claims to join in a single suit to permit economies in litigation. *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000).

Here, each of the Plaintiffs worked for F.E. Moran as a journeyman sprinkler fitter and claims that F.E. Moran laid him off instead of transferring or recalling him because of his race. According to the Plaintiffs, F.E. Moran had a practice of transferring white sprinkler fitters instead of laying them off. (Dkt. No. 21 at ¶ 12.) This is a question of fact common to all of the Plaintiffs. And F.E. Moran laid the Plaintiffs off within months of each other, which indicates that each layoff is part of a series of occurrences. In short, the Plaintiffs' claims implicate whether F.E. Moran had a policy of racial discrimination against black sprinkler fitters working in the Chicagoland area during the summer of 2010. Because these claims concern common

questions of fact and arise from what may be the same series of occurrences, joinder is proper. *See*, *e.g.*, *Jones v. Culver Franchising System, Inc.*, No. 13 C 3269, 2013 WL 6730763 (N.D. Ill. Dec. 20, 2013) (permitting joinder of two unrelated franchisees alleging a company-wide policy of discrimination against the franchisor). Therefore, this Court denies F.E. Moran's motion to sever.

This Court also denies F.E. Moran's motion to bifurcate the Plaintiffs' trials without prejudice. The case has not advanced far enough for this Court to determine whether separate trials are necessary. Discovery should reveal the extent to which the Plaintiffs' claims overlap and the extent to which any prejudice to either side may result if this Court were to order separate trials. Therefore, this motion is better suited for the close of discovery and, better yet, after this Court rules on any dispositive motions.

## CONCLUSION

For the reasons stated herein, this Court denies that Defendant's motion to dismiss (Dkt. No. 23) and motion to sever or bifurcate the Plaintiff's trials (Dkt. No. 26).

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: October 24, 2014