IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Kenneth Martin, et al., | ) | |
| | ) | |
| Plaintiff, | ) | No. 13 C 03526 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| F.E. Moran, Inc., Fire | ) | |
| Protection of Northern Illinois, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Kenneth Martin, Aaron Truesdell, and Johnny Tejada (Plaintiffs) brought claims of racial discrimination against their former employer, Fire Protection of Northern Illinois (FPN). Plaintiffs now propose experts to support their theory that African American employees and other minority individuals received disparate treatment resulting in fewer employment opportunities and a greater incidence of termination. First, Plaintiffs propose Destiny Perry, JD/PhD, to present sociological evidence that pervasive discriminatory attitudes in the workplace can lead to adverse employment actions. Additionally, Plaintiffs propose William Bridges, PhD[1], to present a sociological analysis that would support claims of racial discrimination. FPN moves to strike both experts' reports and bar their testimony. FPN has proposed Jonathan Guryan, PhD[2], to present labor and employment statistics that rebut Dr. Bridges' testimony. Plaintiffs move to strike Dr. Guryan's report and bar his testimony. For the reasons discussed below, the Court will permit the three experts to testify at trial.

---

[1] A *Daubert* hearing was held on February 6, 2017 on the admissibility of Dr. Bridges' expert testimony.
[2] A *Daubert* hearing was held on February 9, 2017 on the admissibility of Dr. Guryan's expert testimony.

## LEGAL STANDARD

"The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009) (citing *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 607 (7th Cir. 2006)). "The purpose of [the *Daubert*] inquiry is to vet the proposed testimony under Rule 702's requirements that it be 'based on sufficient facts or data,' use 'reliable principles and methods,' and 'reliably appl[y] the principles and methods to the facts of the case.'" *Lapsey v. Xtek, Inc.*, 689 F.3d 802, 804 (7th Cir. 2012) (quoting Fed. R. Evid. 702). In evaluating whether an expert's proposed testimony meets the *Daubert* standard, the Court "scrutinize[s] the proposed expert witness testimony to determine if it has 'the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Id.* at 805 (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 152 (1999)). "The proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard" by a preponderance of the evidence. *Lewis*, 561 F.3d at 705; *see also* Fed. R. Evid. 104(a) ("The court must decide any preliminary question about whether a witness is qualified . . . ."); *see also* Fed. R. Evid. 702 advisory committee's note to 2000 Amendment.

Whether to admit expert testimony rests within the wide discretion of the district court. *See Gen. Elec. v. Joiner*, 522 U.S. 136, 142 (1997); *Lapsey*, 689 F.3d at 810. Under Rule 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles

and methods to the facts of the case. Fed. R. Evid. 702; *see also Ortiz v. City of Chicago*, 656 F.3d 523, 526 (7th Cir. 2011). While, in a bench trial, "the judge need not conduct a *Daubert* (or Rule 702) analysis before presentation of the evidence," she "must determine admissibility at some point." *Kansas City S. Ry. Co. v. Sny Island Levee Drainage Dist.*, 831 F.3d 892, 900 (7th Cir. 2016) (citing *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 760 (7th Cir. 2010)); *see also Estate of Stuller v. United States*, 811 F.3d 890, 895 n.3 (7th Cir. 2016) (citing *In re Salem,* 465 F.3d 767, 777 (7th Cir.2006)) ("[W]here the factfinder and the gatekeeper are the same, the court does not err in admitting the evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702.").

In assessing a witness's qualifications, the issue is not whether the witness is qualified in general, but "whether his 'qualifications provide a foundation for [him] to answer a specific question.'" *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) (quoting *Berry v. City of Detroit,* 25 F.3d 1342, 1351 (6th Cir.1994)). Additionally, in assessing the reliability of an expert's testimony, the court primarily reviews the "validity of the methodology employed by an expert, not the quality of the data used in applying the methodology or the conclusions produced." *Manpower, Inc. v. Ins. Co. of Pennsylvania*, 732 F.3d 796, 806 (7th Cir. 2013); *see also Metavante*, 619 F.3d at 761 (noting that Rule 702 requires "that the expert explain the 'methodologies and principles' that support his opinion"). As such, "criticisms do not go to admissibility but to the appropriate weight that should be accorded to the evidence" such that "[d]etermination on admissibility should not supplant the adversarial process; shaky expert testimony may be admissible, assailable by its opponents through cross-examination." *Metavante*, 619 F.3d at 762 (quoting *Gayton*, 593 F.3d at 616).

**DISCUSSION**

Plaintiffs seek to offer expert testimony from Destiny Peery, Ph.D. Peery will testify on the topics of stereotyping, aversive racism, social tuning, and implicit bias. (Dkt. 171 at 2.) Peery's opinions and testimony are based on her review of the relevant literature, her experience as a social psychologist, and a study of emails and deposition testimony produced by FPN during discovery. (Dkt. 171 at 7.) The purpose of her testimony is to describe the context in which FPN made employment decisions and to rebut FPN's proffered legitimate business reasons as pretextual. (Dkt. 171 at 3.)

Plaintiffs also seek to present William Bridges, Ph.D., as an expert witness who will testify as to discrepancies between white sprinkler fitters and black sprinkler fitters in FPN's employment practices. (Dkt. 242 at 1–2.) Bridges' opinions and testimony are based on a statistical analysis of data sets provided by FPN and Sprinkler Fitters Local 281 (Local 281). (Dkt. 242 at 1.) The purpose of his expert testimony is to offer probative evidence of disparate treatment of black sprinkler fitters. (Dkt. 242 at 3.)

FPN seeks to present Jonathan Guryan, Ph.D., as a rebuttal expert witness who will testify to deficiencies in Bridges' statistical analysis. (Dkt. 252 at 5.) Guryan's opinions and testimony are based on his own statistical analysis of the data produced during discovery and his experience as a labor economist. (*Id.*) The purpose of his expert testimony is to show that Bridges' work is not scientifically reliable or proper as a matter of social science and to offer alternative explanations for FPN's employment actions. (*Id.* at 5, 7.)

## I. Dr. Destiny Peery

Peery is an Assistant Professor of Law at Northwestern University, where she has been a research faculty member since 2014. (Dkt. 160-A at 1.) She received both a J.D. and a Ph.D. in social psychology from Northwestern University. (*Id.*) Peery's academic areas of expertise include racial identity, racial categorization and perceptions of race, stereotyping, prejudice, and discrimination. (*Id.*) She has published her research in peer-reviewed psychology journals and law journals. (*Id.*) Peery has also conducted trainings on implicit bias for law practitioners and has taught courses in discrimination law, race, and social science. (*Id.*) Relying on her experience, research in the field, and analysis of statements produced in discovery, Peery intends to provide the following opinions: (1) there is evidence of explicit racial stereotypes at FPN; (2) there is evidence of aversive racism in the form of anti-affirmative action sentiment at FPN; (3) FPN management tolerated and/or cultivated a discriminatory work environment and created an atmosphere influenced by implicit bias; (4) FPN employment decisions and processes are prone to the influence of implicit bias; and (5) implicit bias can lead to adverse employment action. (*Id.* at 3.) FPN moves to strike Peery's reports and bar her testimony based on lack of qualification as an expert and inadmissibility of her opinions.

### A. Qualifications

Peery is qualified under Rule 702. Peery's extensive background in social psychology as it relates to legal doctrine and practice—evidenced by peer-reviewed publications, classroom teaching, and invitations to speak at the Seventh Circuit Bar Association—is sufficient to qualify her as an expert in this subset of social psychology. Contrary to FPN's assertions, Peery is not offering expert testimony on FPN's established policies or procedures, and therefore does not require any background in human resources or corporate management. (Dkt. 160 at 13.)

Instead, her testimony relates to the psychology of a corporate culture of discrimination and people's susceptibility to implicit bias. Her background in social psychology qualifies her to give these opinions.

B. Reliability and relevance of Peery's report

Peery explains that her methodology consists of employing "her professional background and experience to identify and evaluate the characteristics and factors in this case, as supported by general psychological principles from the literature, that bear on the question of whether implicit bias is relevant to understanding the alleged race discrimination in this case." (Dkt. 160-A at 2.) She supports her conclusions in both the record of the case and external research. (Dkt. 160-A at 4-12.) FPN attacks Peery's report for a lack of scientific basis and testable methodology. (Dkt. 160 at 5-6.) But these arguments are unfounded because Peery is not purporting to conduct a traditional scientific assessment, but rather is basing her opinion on general psychological principles and her experience in the field. *See Kumho Tire Co.*, 526 U.S. at 148 (holding that Rule 702 grants testimonial latitude "to all experts, not just to 'scientific' ones"). In cases where "reliability concerns focus on [the expert's] personal knowledge or experience," the trial court has "broad latitude to determine" whether the specific factors described in *Daubert* are reasonable measures of reliability in a particular case. *See, e.g.*, *Loeffel Steel Prod., Inc. v. Delta Brands, Inc.*, 372 F. Supp. 2d 1104, 1118 (N.D. Ill. 2005) (citing *Kumho Tire*, 526 U.S. at 153) (admitting testimony from an expert based on his years of experience in the field and his evaluation of the materials related to the case).

The Seventh Circuit has determined that the critical metric in determining reliability is whether there is a sufficient connection between the methodology and the opinion offered; if the opinion is connected to the underlying information "only by the *ipse dixit* of the expert," then it

may be properly excluded. *Manpower, Inc.*, 732 F.3d at 806 (quoting *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997)); *see also Metavante Corp.*, 619 F.3d at 761 (holding that an expert's testimony was reliable because he did more than "simply testify that [the party]'s performance was commercially reasonable because he said so[.]"). Here, Peery's opinions are connected to established psychological principles, substantial research into the subject of implicit bias, and her own experience characterizing these challenges and training others to avoid them. (Dkt. 160-A at 4-12.) Therefore, Peery's methodology is reliable and her opinions are connected to the facts by more than *ipse dixit*.

In arguing Peery's testimony is not reliable, FPN relies on *Wal-Mart Stores, Inc. v. Dukes*, in which the Supreme Court ruled that an expert's testimony regarding "a strong corporate culture, that makes [Wal-Mart] vulnerable to gender bias" was "worlds away from significant proof that Wal–Mart operated under a general policy of discrimination." 564 U.S. 338, 354 (2011) (internal quotations and citations omitted). The context in *Wal-Mart* is distinguishable; there the issue was whether the discretion of individual managers to independently "take advantage of the opportunity to discriminate" defeats the commonality requirement of class certification. *Bolden v. Walsh Const. Co.*, 688 F.3d 893, 897 (7th Cir. 2012). The testimony was not rejected under *Daubert* standards.

FPN additionally cites to *Jones v. Nat'l Council of Young Men's Christian Associations of the United States of Am.*, in which an expert proffered a report describing general implicit bias in the United States and concluded that, "more likely than not," implicit bias caused the adverse impact. 34 F. Supp. 3d 896, 899-900 (N.D. Ill. 2014). The court in that case held that such conclusions fell "far short of providing a reliable basis to support [the expert's] opinion" because they were not "adequately tied to the facts of the case to be useful to the jury." *Id.* Here, Peery's

opinions are rooted in the facts in the record, and her opinions are not as conclusory as the expert's in *Jones*. Additionally, while *Jones* was a jury trial, the Court in this bench trial need not perform the same gatekeeping role of keeping unreliable expert testimony from the jury. *Metavante Corp.*, 619 F.3d at 760 (citing *Attorney Gen. of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 779 (10th Cir.2009). As a bench trial, the Court can hear the testimony at trial and determine the weight of the evidence at trial without a fear of prejudicing the untrained ear of a juror.

The Seventh Circuit has held that "[a]n expert's testimony qualifies as relevant under Rule 702 so long as it assists the [factfinder] in determining any fact at issue in the case." *Stuhlmacher v. Home Depot U.S.A., Inc.*, 774 F.3d 405, 409 (7th Cir. 2014) (citing S*mith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000)). Peery's testimony related to the science of implicit bias will be helpful in contextualizing the other evidence at trial. FPN's criticisms of her methodology "do not go to admissibility but to the appropriate weight that should be accorded to the evidence." *Metavante Corp.*, 619 F.3d at 762; *see also Baugh v. Cuprum S.A. de C.V.*, 845 F.3d 838, 847 (7th Cir. 2017).

  C. Legal conclusions

Peery's report does not contain impermissible legal conclusions. FPN asserts that Peery's report contains inadmissible legal conclusions such as "stereotypes of blacks are pervasive in U.S. culture and are represented at FPN" and "there is evidence of aversive racism . . . at FPN". (Dkt. 160 at 13-14.) The Seventh Circuit recognizes that "[i]t is the role of the judge, not an expert witness, to instruct the jury on the applicable principles of law. . . accordingly, an expert may not offer legal opinions." *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013); *see also Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d

557, 564 (7th Cir. 2003). In this case Plaintiffs are offering Peery's testimony as circumstantial evidence indicating that FPN's proffered legitimate business reason for its adverse employment actions was pretext. (Dkt. 171 at 3.) Therefore, statements, like those in *Jones*, that speak to the ultimate issue of the case are inadmissible. However, Peery opines on the *presence* of stereotypes and aversive racism at FPN and how that *could have influenced* decision makers. (Dkt. 171 at 7.) If the issue were before a jury, this distinction might be lost. But the Court can assess Peery's testimony carefully and disregard any missteps into the arena of legal conclusion. *Metavante Corp.*, 619 F.3d at 760.

        D. Prejudice to FPN

Peery's report does not unduly prejudice FPN. The Seventh Circuit has held that issues of prejudice under Rule 403 "carry significantly less weight in a bench trial, where there is a presumption that the court is not improperly influenced by the evidence brought before it." *See e.g., City of Joliet v. Mid-City Nat. Bank of Chicago*, No. 05 C 6746, 2012 WL 5463792, at *11 (N.D. Ill. Nov. 5, 2012); *see also United States v. Shukri*, 207 F.3d 412, 419 (7th Cir.2000) ("In a bench trial, we assume that the district court was not influenced by evidence improperly brought before it unless there is evidence to the contrary."); *Ashford v. Gilmore,* 167 F.3d 1130, 1136 (7th Cir.1999) ("[T]he law presumes that judges are not influenced by improper evidence brought before them."); *United States ex rel. Placek v. Illinois,* 546 F.2d 1298, 1305 (7th Cir.1976) ("[W]hen we have held that evidence was improperly admitted in a bench trial, we have refused to presume that the trial judge considered it in reaching his verdict."). FPN argues that Peery's opinions are highly prejudicial to FPN and should be barred pursuant to Rule 403. (Dkt. 160 at 14.) FPN specifically asserts that Peery's report "overly dramatize[s]" the facts and offers insufficient citations to the record. (*Id.* at 14-15.) The Court is capable of parsing the

9

drama from the facts. Peery's report and testimony will not be barred based on FPN's allegations of prejudice. The Court will, of course, consider FPN's appropriate objections to specific testimony.

For these reasons the testimony of Plaintiffs' expert, Destiny Peery, Ph.D., is admissible under the *Daubert* standard. FPN's arguments do not go to admissibility but to the weight of the evidence, which the Court will consider carefully at trial.

## II. Dr. William Bridges

Bridges is a Professor Emeritus of Sociology at the University of Chicago and has been employed at the school for nearly 32 years. (Dkt. 242 at 2.) He holds a B.A. from Ohio State University in Sociology and a M.A. and Ph.D. from Northwestern University in the same field. (*Id.*) Bridges' academic areas of expertise include quantitative and statistical analysis and the sociology of labor markets. (*Id.*) He is a member of the American Sociological Association and a recipient of its Distinguished Scholarly Publication Award. (*Id.* at n. 1.) Furthermore, both the National Science Foundation and the American Bar Foundation have funded Bridges' research. (*Id.* at 2.) Bridges has conducted statistical analyses in several employment discrimination cases. (*Id.*)

Relying on his statistical analysis of the available data in this case, Bridges intends to provide the following opinions: (1) there exists a lack of black fitters employed above the position of foreman; (2) there exists a decline in black hours and earnings over time; (3) blacks are segregated into specific job sites; (4) there exist statistically significant disparities between black and white fitters before and after March 1, 2009; (5) and these observed disparities continued through early 2015. (Dkt. 242 at 9–12.) Bridges also offers a sixth conclusion, which describes his backpay computations. (Dkt. 242 at 12.) FPN does not challenge Bridges'

qualifications as an expert generally, but does point to the fact that Bridges has never made a damages calculation in an employment case as a reason to strike his conclusion about damages. (Dkt. 227 at 15.) FPN nonetheless moves to strike Bridges' reports and bar his testimony based on inadmissibility.

FPN does not attack Bridges' qualifications as an expert. But it seeks to bar the entirety of Bridges' reports, opinions, and testimony because it allegedly lacks relevancy, reliability—including sufficient intellectual rigor—and usefulness to the trier of fact.

### A. Reliability of Bridges' Report

Bridges' opinions are based on a sufficiently established methodology and are reliable under Rule 702. Nevertheless, FPN argues that Bridges' Conclusions Two and Four, which relate to disparities between African-American and Caucasian sprinkler fitters and a general decline in African-American hours and earnings over time, are unreliable due to Bridges' failure to account for certain variables. (Dkt. 227 9–10.) Similarly, FPN argues that Bridges' Conclusion Three, that African-American sprinkler fitters are segregated at certain job sites, is based on unrelated studies and fails to account for certain variables. (Dkt. 227 at 10–12.)

FPN argues more specifically that by failing to account for particular "rival variables"[3] in his analysis, Bridges employed less intellectual rigor in preparing this analysis than he would have in his own academic research. (Dkt. 227 at 5.) As noted above, the Supreme Court and the Seventh Circuit have held that "one purpose of the *Daubert* inquiry is to determine if [the proposed testimony] has 'the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Lapsley*, 689 F.3d at 805 (quoting *Kumho Tire Co.*, 526 U.S. at 152). Specifically, Bridges did not consider or account for the purportedly limited number of

---

[3] Bridges notes in his deposition that a "rival variable" is one "that plausibly might be rival explanations that would be included in a model" or that may represent "an alternative explanation of the findings." (Dkt. 245 at 5 n. 1; Bridges Dep. Tr. 175:2–24; 176:1–7.)

11

black sprinkler fitter members of Local 281 or for the availability of black sprinkler fitters for hire by FPN. (Dkt. 227 at 6.) FPN concedes that an analysis[4] need not include all measurable variables but maintains that "certain factors are crucial to statistical evidence in Title VII cases." *Bennett v. Roberts*, 295 F.3d 687, 697 (7th Cir. 2002) (noting specifically that, "properly identifying the relevant labor market is the key ingredient in proving Title VII discrimination through the use of statistics"). (Dkt. 245 at 6.) Therefore, Bridges' omission of the availability of black sprinkler fitters was a fatal flaw that goes to the admissibility of the analysis. (Dkt. 245 at 6.)

Plaintiffs contend that this data was not so crucial to Bridges analysis that it renders it inadmissible, and further notes that Bridges could not have performed the analysis FPN desires because there was insufficient data available. (Dkt. 242 at 6–8.) Generally, if an expert does not believe that sufficient data exists to support a particular analysis, he should not perform the analysis because an expert's opinion, unfounded in sufficient data, will be deemed unreliable. *See Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 892 (7th Cir. 2011) (holding that an expert's opinion was inadmissible when he leaped, "without data or testing," to his conclusion); *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007) (holding that a physician's opinion, without the support of epidemiological data or any physiological explanation was unreliable). Additionally, there is no need to evaluate an expert's underlying data or factual assumptions so long as "there is a basis in the record supporting the [expert's] factual assumption[s]." *See e.g.*, *Artunduaga v. Univ. of Chicago Med. Ctr.*, No. 12 C 8733, 2016 WL 7384432, at *5 (N.D. Ill. Dec. 21, 2016); *see also Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753,

---

[4] The Court notes that Bridges has not performed a regression analysis specifically, but suggests that the case law should apply equally to similar statistical analyses that are used by professionals in relevant analytical and social science fields.

768 (7th Cir. 2013) ("The fact that an expert's testimony contains some vulnerable assumptions does not make the testimony irrelevant or inadmissible.")

Despite FPN's objections, expert testimony does not become inadmissible merely because the expert has not included all of the variables in his analysis that his opponent would have liked. *See e.g.*, *Equal Employment Opportunity Comm'n & Bailey*, No. 10 C 6139, 2016 WL 5796890, at *3 (N.D. Ill. Sept. 30, 2016) (refusing to bar a sociology expert seeking to prove disparate treatment of African-American drivers even when the defendant argued that the expert "did not control for other potential influences on route assignments, other than race"); *see also Gerlib v. R.R. Donnelley & Sons Co.,* No. 95 C 7401, 2002 WL 1182434, at *7 (N.D. Ill. June 3, 2002) (refusing to bar a statistics expert because, although he "may not have considered all of the factors that [Defendant] thinks he should have considered, [ ] he unquestionably considered" other variables). Also, "the usual concerns of [Rule 702]—keeping unreliable expert testimony from the jury—are not present in [a bench trial][.]" *Metavante Corp.*, 619 F.3d at 760 (citing *Attorney Gen. of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 779 (10th Cir.2009). Any omissions of particular variables from Bridges' analysis will be appropriately weighed.

Additionally, FPN claims that Bridges' Conclusion Six, in which Bridges calculated Plaintiffs' alleged damages, is unreliable and should be barred. (Dkt. 227 at 14-15.) FPN supports this assertion by noting that Bridges admitted that he had never performed a similar calculation before, that he based the assessment only on what he thought was reasonable, and that he again failed to consider certain variables. (*Id.*) FPN cites to *Am. Honda Motor Co. v. Allen*, which found that an expert's self-proclaimed "reasonable" methodology, even when published in a peer-reviewed journal, was questionable. 600 F.3d 813, 818 (7th Cir. 2010) (holding an expert's testimony based on a "somewhat speculative" standard was not

13

scientifically reliable). Plaintiffs assert that Bridges' conclusion is appropriate based on other Seventh Circuit case law that describes back pay calculations as "not an exact science." *Gracia v. Sigmatron Int'l, Inc.*, 130 F. Supp. 3d 1249, 1258 (N.D. Ill. 2015), *aff'd*, 842 F.3d 1010 (7th Cir. 2016). Because Bridges is a qualified expert, and because FPN will have an expert rebuttal on this issue, the testimony will be allowed.

      i. *Relevance of Bridges' Report*

Bridges' remaining conclusions are relevant and will assist the trier of fact. FPN challenges the relevance of Bridges' opinions that are offered to provide context for Plaintiffs' disparate treatment claims. In particular, FPN claims that Bridges' Conclusion One, which states simply that there were no African-Americans employed above the position of foreman, is irrelevant to Plaintiffs' disparate treatment. (Dkt. 227 at 8–9.) Additionally, FPN argues that Conclusions Three and Five, noting segregation at job sites and other disparities between African-American fitters and Caucasian fitters that persisted over time, are "red herrings" that serve only to distract from the real issues of the case. (Dkt. 227 at 10.) However, these conclusions are proffered predominantly to rule out the possibility that the patterns could be attributed to chance and to provide a broader context for Plaintiffs' claims, not to definitively prove disparate treatment. The Seventh Circuit has allowed statistical evidence under similar circumstances. *See Adams v. Ameritech Servs., Inc.*, 231 F.3d 414, 427 (7th Cir. 2000) (noting that "ruling out chance was an important step in the plaintiffs' proof, even if it was not a single leap from the starting line to the finish line"); *see also Gerlib*, 2002 WL 1182434, at *6 (finding that "[t]he question before us 'is not whether [the expert's report] prove[s] the entire case; it is whether [the report was] prepared in a reliable and statistically sound way'"). The evidence is relevant, even if only to rule out chance.

For these reasons the testimony of Plaintiff's expert, William Bridges, Ph.D., is admissible under the *Daubert* standard.

**III.    Dr. Jonathan Guryan**

Guryan is a tenured Associate Professor of Economics and Human Development and Social Policy at Northwestern University.  (Dkt. 252 at 5.)  He holds a B.A. in Economics from Princeton University and a Ph.D. in the same from the Massachusetts Institute of Technology.  (Dkt. 252-1 at 4.)  Guryan's academic area of expertise is labor economics, and his research focuses on the causes and consequences of racial inequality in labor markets and education.  (Dkt. 252 at 5.)  In conducting his research Guryan often uses statistical techniques to analyze large datasets.  (Dkt. 252-1 at 5.)  Guryan serves as an editor for both the Journal of Labor Economics and Labour Economics and he is a reviewer for other economic journals.  (*Id.* at 4.)  His research has been published and presented in many prestigious arenas, including to the U.S. Department of Education.  (*Id.* at 5.)  Guryan has performed analyses of compensation and other employment outcomes in other employment discrimination cases prior to this one.  (*Id.*)  Relying on his review of the materials produced by Plaintiffs' expert, William Bridges, Ph.D. and other data produced in discovery, Guryan intends to rebut each of Bridges' conclusions:  (1) Conclusion One offers no evidence or indication of discrimination; (2) Conclusion Two fails to offer a benchmark comparison and therefore is irrelevant to show discrimination; (3) Conclusion Three offers no context and offers no evidence to show the existence of a more equitable distribution of African-American fitters; (4) Conclusion Four may be explained by non-discriminatory factors; (5) Conclusion Five similarly fails to offer a benchmark comparison and therefore is irrelevant to show discrimination.  (Dkt. 252-1 at 15–16.)  Guryan also challenges

Bridges' damages calculation on the belief that Bridges used faulty assumptions not supported by the evidence. (*Id.* at 16.)

Plaintiffs move to strike Guryan's reports and bar his testimony based on inadmissibility. Plaintiffs assert that Guryan's "availability" analysis is unreliable, irrelevant, and unhelpful to the Court. Plaintiffs also seek to bar Guryan's damages calculation based on the same failures. Much of the same analysis of FPN's arguments with respect to Bridges' applies to Guryan.

    A. Reliability of Guryan's Report

Guryan's opinions are based on a sufficiently established methodology and are reliable under Rule 702. Nevertheless, Plaintiffs first argue that Guryan's availability analysis is unreliable because it is not responsive to the claims or facts of the case.[5] (Dkt. 248 at 9.) They note that the internal hiring procedures at FPN are significantly different from standard practices in other industries, and that Guryan's analysis failed to accurately capture these procedures. (Dkt. 248 at 10.) Plaintiffs further contend that Guryan failed to respond to Bridges' conclusions that the hiring practices were not due to chance. (*Id.*) FPN answers that Guryan's report was a direct response to Bridges' methodology and findings, and that Guryan conducted his own analysis to account for a particular rival variable, of which Bridges was aware. (Dkt. 252 at 8.) This Court already discussed the impact of failing to include variables, and "'no single factor is either required in the analysis or dispositive as to its outcome.'" *Baugh*, 845 F.3d at 844 (quoting *Ford Motor Co.*, 215 F.3d at 719).

---

[5] The Court notes that the parties spend several pages each arguing about Guryan's qualifications to suggest other rival variables that Bridges could have considered in his report without further analysis. The Court agrees with FPN that, just as Guryan is qualified by his research and experience in labor economics to perform a detailed analysis of one demonstrative rival variable, so too is he qualified to note in his report that there are other variables he could have considered, but chose not to for the purpose of this litigation.

Plaintiffs also argue that Guryan's availability analysis is unreliable for primarily three reasons. (Dkt. 248 at 9–14.) First, Plaintiffs contend that Guryan received incomplete data from Local 281. (Dkt. 248 at 10.) But the quality of an expert's data goes to weight at trial, not to the reliability analysis. *See Manpower, Inc.*, 732 F.3d at 806; *see also Metavante*, 619 F.3d at 761. Also, Plaintiffs' reliance on *Wasson v. Peabody Coal Co.* is misplaced, as the expert relied on data from "only a single" customer in a "single month" to extrapolate a number supposedly representing many customers over twenty years. 542 F.3d 1172, 1176 (7th Cir. 2008). The data Guryan received from Local 281 was far more robust than the expert's in *Wasson*. Second, Plaintiffs argue that Guryan's reliance on the available "out-of-work" lists is unreliable because FPN may not have used these lists in making hiring decisions. (Dkt. 248 at 13.) FPN responds that Guryan used the lists to determine the total available fitters in the labor pool, not to assess FPN's hiring decisions. (Dkt. 252 at 12.) Third, Plaintiffs take issue with Guryan's definition of "hire" because he failed to take into consideration nuances of the procedures in the fitter industry and the amount of hires is not a meaningful number. (Dkt. 248 at 14.) Once again, all of these arguments go to the weight of the evidence, not to its admissibility.

Guryan's availability analysis will be helpful to compare to Bridges' findings, and the Plaintiffs should assail any shortcomings in his testimony through cross-examination. *Metavante*, 619 F.3d at 762; *see also Gayton*, 593 F.3d at 616); *Baugh*, 845 F.3d at 847 ("[I]t is often the case that experts reach conflicting conclusions based on applying different but nevertheless reliable methodologies to a set of partially known facts. The determination of which opinion (if any) identifies the most probable cause of an injury is typically a question of weight, not reliability.").

    B. Relevance of Guryan's Report

Guryan's damages calculation is relevant and helpful because it responds to Bridges' damages calculation. Plaintiffs, however, argue that Guryan's proffered calculation incorrectly assumes that Plaintiffs would be able to fully mitigate their earnings losses. (Dkt. 248 at 14.) Plaintiffs can cross Guryan on that issue at trial.

For these reasons the testimony of FPN's expert, Jonathan Guryan, Ph.D., is admissible under the *Daubert* standard. Plaintiffs' arguments go instead to the weight of the evidence, which the Court will consider carefully.

## CONCLUSION

For the reasons stated above, the Court denies FPN's motion to strike the report and bar the testimony of Plaintiffs' expert, Destiny Peery, Ph.D. (Dkt. No. 159.) The Court also denies FPN's motion to strike and bar Plaintiffs' expert, William Bridges, Ph.D. (Dkt. No. 226), and denies Plaintiffs' motion to strike and bar FPN's rebuttal expert, Jonathan Guryan, Ph.D. (Dkt. No. 246).

Date: 3/24/2017

_____
Virginia M. Kendall, U.S. District Court Judge